```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
DAVID A. MICHELI, JR.,

                Plaintiff,            10-CV-6655

           v.                         DECISION
                                      and ORDER
MICHAEL J. ASTRUE,
Commissioner of Social Security

                Defendant.
_____
```

## Introduction

Plaintiff, David Micheli, Jr., ("Plaintiff") brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits ("DIB"). Specifically, Plaintiff argues that the decision of the Commissioner is not supported by substantial evidence and requests that this Court reverse the decision or, in the alternative, remand the case to the Social Security Administration for further proceedings.

Commissioner moves for judgment on the pleadings affirming the final decision of the Commissioner denying Plaintiff DIB. Plaintiff opposes the motion and cross-moves for judgment on the pleadings. For the reasons set forth herein, the Commissioner's motion for judgment on the pleadings is granted and Plaintiff's motion for judgment on the pleadings is denied. Plaintiff's Complaint is dismissed with prejudice.

**Background**

Plaintiff met the insured status requirements for purposes of DIB through March 31, 2006. (Tr. 9).[1] Plaintiff filed an application for DIB on January 9, 2008, alleging disability since April 1, 2004. The application was denied on May 14, 2008. Plaintiff thereafter requested an administrative hearing. Administrative Law Judge ("ALJ"), David A. Ettinger conducted a video hearing on March 26, 2010. Plaintiff appeared at the hearing with his attorney, Kevin, J. Bambury, Esq. On April 8, 2010, the ALJ found that Plaintiff was not disabled within the meaning of the Act. The ALJ's decision became the final decision of the commissioner when the Appeals Council declined to review the matter on October 21, 2010. Id. This action followed.

**Discussion**

I. **Jurisdiction and Scope of Review**

Title 42, Section 405(g) of the United States Code grants this Court the power to review the decision of the Commissioner and, if appropriate, remand the matter for further proceedings. See Mathews v. Eldridge, 424 U.S. 319, 320, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Section 405(g) additionally directs this Court to accept the Commissioner's findings of fact so long as they are supported by substantial evidence in the record. See Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998); see also Williams v. Comm'r of Soc. Sec.,

---

[1]"Tr." refers to the transcript of the administrative record.

2007 U.S.App. LEXIS 9396 at *3 (2d Cir. 2007). "Substantial evidence" is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F.Supp. 265, 267 (S.D.Tex. 1983) (citation omitted). Section 405(g) thus limits the Court's review to two inquiries: (1) whether the Commissioner's decision was supported by substantial evidence in the record and, (2) whether the Commissioner's decision was based upon an erroneous legal standard. See Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). Under section 405(g), this Court's review of the Commissioner's decision is not *de novo*, and is limited to an inquiry as to whether the Commissioner's decision was supported by substantial evidence. See Wagner v. Secretary of Health & Human Serv., 906 F.2d 856, 860 (2d Cir. 1990).

Both Plaintiff and Commissioner move for judgment on the pleadings pursuant to 42 U.S.C. § 405(g) and Rule 12(c) of the Federal Rules of Civil Procedure. Section 405(g) states that, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Under Rule 12(c),

"[j]udgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." See Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988) (citing National Fidelity Life Ins. Co. v. Karaganis, 811 F.2d 357, 358 (7th Cir. 1987)).  Remand to the Commissioner for further development of the evidence is warranted when the record contains gaps which render the final decision of the Commissioner inappropriate. See Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2005).

II. **The ALJ's decision to deny Plaintiff benefits was supported by substantial evidence in the record**

A. **The ALJ's Determination**

In his decision, the ALJ adhered to the Social Security Administration's five step analysis which requires that the ALJ consider the following:

> (1) Whether Plaintiff was engaged in substantial gainful work during the relevant period. Plaintiff is not disabled if he has engaged in such work.
>
> (2) If Plaintiff is not currently engaged in substantial gainful work, the ALJ considers whether Plaintiff has a severe medically-determinable physical or mental impairment that may result in death or is expected to last or has lasted for a period of 12 months or more ("the duration requirement"), or whether Plaintiff has a combination of impairments which meet this standard.
>
> (3) The ALJ then examines whether the severity of the medical impairment meets or equals one of the listings in Appendix 1 of Subpart P and whether it meets the duration

> requirement. If so, the ALJ will find that Plaintiff is disabled.
>
> (4) If not, the ALJ will consider Plaintiff's residual functional capacity and past relevant work. If Plaintiff can still do his or her past relevant work, Plaintiff is not disabled.
>
> (5) If not, the ALJ will consider Plaintiff's residual functional capacity, age, education, and work experience to determine if Plaintiff can make an adjustment to other work in the National economy. If the ALJ finds that Plaintiff can make such an adjustment, the ALJ will conclude that Plaintiff is not disabled. If the ALJ finds that Plaintiff cannot make such an adjustment, the ALJ will conclude that Plaintiff is disabled.
>
> 20 C.F.R. § 404.1520(a)(4)(i)-(v) and 419.920(a)(4)(i)-(v) (2009).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful work activity from April 1, 2004 through March 31, 2006, his date last insured for purposes of DIB eligibility. (Tr. 11; see 20 C.F.R. § 404.1571). At step two, the ALJ concluded that Plaintiff had the severe impairments lumbago and myofacial pain syndrome. See C.F.R. § 404.1520(c). At step three, the ALJ concluded that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 § C.F.R. Part 404, Subpart P, Appendix 1. Id. At step four, the ALJ found that through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except that he must be allowed to stand for a few minutes after sitting for one hour. (Tr. 12). The ALJ

considered Plaintiff's past relevant work and concluded that given Plaintiff's RFC, he could not perform any past relevant work. At step five, the ALJ concluded that Plaintiff is defined as a young individual, has at least a high school education and is able to communicate in English. (Tr. 14; 20 C.F.R. §§ 404.1563, 404.1564). The ALJ considered Plaintiff's age, education, work experience and residual functional capacity and concluded that there were jobs in significant numbers in the national economy that Plaintiff could perform. See 20 C.F.R. §§ 404.1569, 404.1569(a). The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Act from the alleged onset date, April 1, 2004, through the date last insured, March 31, 2006. (Tr. 15; 20 C.F.R. § 404.1520(g)).

B. **Plaintiff's Medical History**

Plaintiff was injured in 1999 while he was employed as a maintenance worker at a Holiday Inn. (Tr. 232). On September 27, 2001, Dr. Romanth Waghmare, M.D. conducted a provocative discogram at L4-5 on Plaintiff to address discogenic low back pain and leg pain. (Tr. 226). The surgery was considered minor, and Plaintiff was advised to resume normal activity after 2 days. (Tr. 230).

Plaintiff went to the Gosy & Associates Pain Treatment Center and saw Dr. Jerry Tracy III, M.D. for the first time on May 7, 2004. (Tr. 447-48). Dr. Tracy stated that Plaintiff's disability was moderate to marked, although he also noted that Plaintiff walked into the office unassisted and without antalgia. Id.

Plaintiff went to Dr. Tracy's office again on August 8, 2004 and saw Darren Rath, RPA-C. P.A. Rath noted that Plaintiff appeared healthy and had no signs of acute distress. He also stated that Plaintiff's disability was temporary. (Tr. 444-45). Plaintiff saw P.A. Rath and Dr. Tracy a total of almost thirty times between May 7, 2004 and October 5, 2008. (Tr. 347-448). During all of these visits, the treatment notes indicated that Plaintiff was in no acute distress and walked into the office with neither assistance nor antalgia. The treatment notes also indicated that Plaintiff had a moderate to marked disability. The notes occasionally indicated that the disability was "temporary." The treatment notes also indicate that Plaintiff was unable to perform the tasks of his previous employment as a maintenance worker. Id.

For the first time on March 27, 2009, Dr. Tracy stated that Plaintiff appeared in some discomfort upon examination. (Tr. 475). On July 9, 2009, Dr. Tracy stated that Plaintiff was markedly disabled at 75%. (Tr. 482). On March 2, 2010, Dr. Tracy stated that he believed Plaintiff was a candidate for Social Security Disability. (Tr. 500).

On March 5, 2010, Dr. Tracy filled out a form describing Plaintiff's RFC despite his impairments. (Tr. 494-99). Dr. Tracy opined that Plaintiff could sit for 15 minutes at one time and for 2 hours total during the course of an 8-hour workday but did not need to alternate postures or rest after sitting. Dr. Tracy

further opined that Plaintiff could stand or walk for about 15 minutes at a time and for a total of 2 hours during the course of an 8-hour workday but does not need to alternate postures or rest after standing or walking. The RFC indicated that Plaintiff could occasionally lift 1-5 pounds and could rarely lift 6-10 pounds. Id. The RFC provided that Plaintiff did not need to rest at all during the course of an 8-hour workday, yet Dr. Tracy stated that Plaintiff does need to rest for 2 hours during an 8-hour workday. ("Rest for some period of time during an 8-hour work day . . is not medically indicated.") (Tr. 496.) Dr. Tracy also stated in the RFC that Plaintiff had these restrictions since March 4, 1999. Id.

Plaintiff was awarded Workers' Compensation benefits on June 20, 2006. The Workers' Compensation Board found insufficient evidence that the claimant had a permanent restriction or loss of use as a result of this injury. (Tr. 393).

Plaintiff first saw Dr. Andrew Cappuccino, M.D. at the Buffalo Spine Surgery Center on August 6, 2004. Dr. Cappuccino opined that Plaintiff was "temporarily disabled to a marked degree." (Tr. 203). On January 28, 2005, August 17, 2005 and December 12, 2005, Dr. Cappuccino's disability assessment was "a marked degree of disability." (Tr. 198-203).

Plaintiff first saw Dr. Peter Capicotto, M.D. at Greater Rochester Orthopedics on March 3, 2006. Dr. Capicotto also opined

that Plaintiff was totally disabled. (Tr. 232-33). On March 23, 2007, however, Dr. Capicotto noted that Plaintiff's diskogram results were inconsistent with his pain, and that the disk replacement seemed to be in excellent position. (Tr. 235). On May 4, 2007, Dr. Capicotto noted that Plaintiff's diskogram revealed dye leakage. (Tr. 236). On the same date, Dr. Capicotto stated that he believed that Plaintiff was totally disabled from the workforce. Id.

Disability Examiner, M. Rodenhizer completed an RFC assessment on March 14, 2008 in which he opined that Plaintiff was capable of occasionally lifting or carrying 20 pounds; and could frequently lift or carry 10 pounds. Plaintiff can stand or walk for a total of 6 hours during an 8-hour workday and sit for a total of 6 hours during an 8-hour workday. Plaintiff can push or pull with hand or foot controls. Plaintiff can occasionally climb, balance, stoop, kneel, crouch and crawl. Plaintiff has no manipulative or environmental limitations and has the RFC to perform work with a light level of exertion. (Tr. 325-30). Disability Examiner Rodenhizer never examined Plaintiff, and based his RTF assessment on the evidence in the record. (Tr. 325).

C.  **The Hearing Testimony**

Plaintiff recited his medical history and daily activities when he testified at his hearing before the ALJ on March 26, 2010. (Tr. 22-39). He claimed that he had to stop working at his last

job because there was a lot of lifting which caused too much pain. He initially underwent one failed surgery in late 2001 or early 2002 followed by disc replacement surgery in January of 2003. Prior to surgery his pain was in the lower back and left leg. His pain did not subside after surgery. He feels pain in his low back from the L5 region extending upward in an area about the size of a football along with leg pain in his left leg down to about his knee. His back pain is constant, and it remains at a sustained level of 7 out of 10. His leg pain comes and goes multiple times each day. He suffers spasms is his back 6 to 8 times a day which make his back pain increase from a 7 to almost a 10. He walks with a hunch, and he stated that he "[doesn't] walk normal." He can walk for 20 minutes before his back locks up and his legs start to shake. He can lift and carry a gallon of milk from the refrigerator to the counter and can pick it up off of the floor a couple times. He has trouble concentrating because of the pain. His typical day consists of reading, watching television, and playing video games. He watches television for six or seven hours per day while laying down. He does drive, but when he drives the 42 minutes to his pain management appointments, he is "a mess by the time he gets there." Id.

Vocational expert, Andrew Pasternak also testified at the administrative hearing on March 26, 2010. The ALJ provided Mr. Pasternak with the following hypothetical: Consider an

individual who has completed two years of college, has the same past relevant work as Plaintiff, has the ability to perform sedentary work, must alternate sitting and standing every hour, can only perform unskilled work and may need a few minutes of distraction time every hour. Mr. Pasternak testified that an individual of those qualifications and abilities would be able to perform an unskilled assembly job, a credit clerk job and an inspector job, all of which exist in substantial numbers in the national economy. (Tr. 41-42).

C. **The ALJ gave proper weight to the opinions of treating physician, Dr. Tracy**

Plaintiff argues that the ALJ's failure to afford controlling weight to the opinion of his treating physician, Dr. Tracy, is an error of law because his opinions were supported by the medical evidence in the record and not inconsistent with other evidence in the record. Plaintiff argues that Dr. Tracy's opinions were consistent with the opinions of Dr. Capicotto. Plaintiff further argues that the ALJ did not consider the relevant factors of the treating physician relationship. See 20 C.F.R. § 404.1527(d)(2); SSR 96-2p.

The opinion of a treating physician is given controlling weight as long as it is supported by substantial evidence in the record and is not inconsistent with other evidence. See 20 C.F.R. 404.1527(d)(2). However, the ALJ is not required to give controlling weight to the treating physician's opinion if it is

inconsistent with medical evidence and clinical findings in the record. See Wavercak v. Astrue, 2011 U.S. App. LEXIS 8459, at *5 (2d Cir. N.Y. Apr. 25, 2011). Moreover, a physician's opinions are given less weight when those opinions are internally inconsistent. See Michels v. Astrue, 297 Fed. Appx. 74, 75 (2d Cir. 2008).

In declining to afford controlling weight to Dr. Tracy's opinions, the ALJ found that Dr. Tracy's opinions are not supported by clinical or laboratory findings and that his RFC assessment is internally inconsistent.

This Court finds that the record supports the ALJ's finding that Dr. Tracy's RFC assessment made on March 5, 2010 was not entitled to controlling weight.  The RFC stated that Plaintiff could sit, stand and walk for a combined four hours during a workday, but he did not have to lie down. (Tr. 496).  Yet, the RFC also stated, in direct contradiction, that Plaintiff needed to rest by laying down for 2 hours during an 8-hour workday. Id.  The assessment was internally inconsistent which supports the ALJ's finding to not afford Dr. Tracy's opinion controlling weight.

Also, Dr. Tracy's opinion that Plaintiff could sit for no more than 15 minutes is inconsistent with the record. (Tr. 34, 494). Plaintiff testified to driving about 40 minutes to each appointment with Dr. Tracy. (Tr. 34).  Plaintiff alleges that he would be "a mess" by the time he gets to the appointment, because he would have been sitting for 40 minutes in the car. Id.  This is inconsistent

with all of the treatment notes taken by Dr. Tracy and P.A. Rath during examinations that took place between the alleged onset date and the date last insured. All of the treatment notes recorded during that period state that Plaintiff arrived in no acute distress and with no antalgia. (Tr. 400-48). Therefore, the ALJ correctly noted that Dr. Tracy's RFC which stated that Plaintiff could sit for no longer than 15 minutes was inconsistent with other evidence in the record. (Tr. 13).

Plaintiff also argues that the treating physician's retrospective opinion should still be afforded controlling weight so long as it is not contradicted by other medical or compelling non-medical evidence. See Brown v. Apfel, 991 F. Supp. 166, 171 (W.D.N.Y. 1998). A physician's retrospective assessment is not entitled to controlling weight if it is contradicted by other medical evidence in the record. See Byam v. Barnhart, 336 F.3d 172, 183 (2d Cir. 2003). However, the ALJ must give reasons for deciding not to give controlling weight to the opinions of a treating physician. See Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000); 20 C.F.R. § 404.1527(d)(2).

The ALJ noted that Dr. Tracy's RFC assessment made on March 5, 2010 stated that Plaintiff's limitations had been existent since March 4, 1999, five years earlier. (Tr. 498). Yet, the earliest treatment notes by Dr. Tracy in the record are dated May 7, 2004. (Tr. 447-48). Dr. Tracy does not explain how he was able to assess

13

Plaintiff's physical capacity for a period of five years before he first examined Plaintiff.

The ALJ properly determined that Dr. Tracy's retrospective opinion of Plaintiff's limitations was not entitled to controlling weight. (Tr. 13, 448, 498).  Each time Plaintiff saw Dr. Tracy between April 1, 2004 and March 31, 2006, Dr. Tracy stated that Plaintiff did not appear in acute distress, walked into the office unassisted, and appeared healthy. (Tr. 400-48).  This evidence supports the ALJ's decision that Plaintiff was not disabled.

Finally, Plaintiff argues that the ALJ failed to adequately develop the record by neglecting to seek clarification from Dr. Tracy.  Social Security Ruling ("SSR") 96-5p requires that the ALJ recontact a treating physician if the ALJ is unclear as to the basis of that physician's findings.  Also, 20 C.F.R. § 404.1512(e) requires that the ALJ recontact a treating physician if there is insufficient evidence in the record for the ALJ to make a disability determination.

The ALJ found that Dr. Tracy's medical opinions were not supported by objective medical evidence and were inconsistent with other evidence in the record.  Since the ALJ had sufficient evidence to determine whether Plaintiff was disabled and he was not unclear as to the bases of Dr. Tracy's findings, he was not required to recontact Dr. Tracy.  "[W]here there are no obvious gaps in the administrative record, and where the ALJ already

possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." See Rosa v. Callahan, 168 F.3d 72, 80 at note 5 (2d Cir. 1999)(citing Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996)). Accordingly, this Court finds that the ALJ adequately developed the administrative record and gave proper weight to the opinions of treating physician, Dr. Tracy.

## Conclusion

For the reasons set forth above, this Court finds that the Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence. Accordingly, the Commissioner's motion for judgment on the pleadings is granted and Plaintiff's motion for judgment on the pleadings is denied. Plaintiff's complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

                                              s/Michael A. Telesca
                                                 MICHAEL A. TELESCA
                                    United States District Judge

DATED: September 13, 2011
       Rochester, New York